## NO SUMMONS ISSUED

**ORIGINAL**

★ FILED ★

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2012 MAR 24  PM 9: 24

-------------------------------------------------------------X

VERNNESSCIA WALROND,

CLERK
U.S. DISTRICT COURT
E.D.N.Y.
AFTER HOURS DROP BOX
**COMPLAINT**

                                        Plaintiff,

                    -against-

# 12 -   1491

THE CITY OF NEW YORK, a municipal corporation,
DETECTIVE CHARLES LOPRESTI; SERGEANT
MARK ALVARADO; SERGEANT REGINALD SYKE,
DETECTIVE RICHARD AVEROSKI, DETECTIVE
THOMAS CANNY, and JOHN AND JANE DOES
Individually and as Police and Supervisory Officers of the
New York City Police Department, the identity and number
of which is presently unknown,

**JURY TRIAL
DEMANDED**

# KUNTZ, J.

# MANN. M.J.

                                        Defendants.

-------------------------------------------------------------X

Plaintiff, Vernnesscia Walrond, by her attorney, the Law Office of Glenn A.

Wolther, as and for her complaint alleges as follows, upon information and belief:

### Jurisdiction & Venue

1.      Jurisdiction is based on 28 U.S.C. §§1331 and 1343, and the

        pendant and supplemental jurisdiction of this Court, pursuant to 28 U.S.C.

        §1367, to entertain claims arising under state law.

2.      Venue is properly lodged in this Judicial District pursuant to 28 U.S.C.

        §1391(b)(1), this being the District in which the majority of events and omissions

        giving rise to the claims occurred.

1

## Parties

3.    At all times material hereinafter mentioned Plaintiff, Vernnesscia Walrond ("Plaintiff" or "Walrond") is an adult female.

4.    At all times material hereinafter mentioned, Defendant the City of New York ("NYC"), was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.  NYC acts by and through its agencies, employees, and agents including but not limited to the New York City Police Department ("NYPD") and its employees. The NYPD is a non-suable subdivision of NYC and its employees are employees of NYC.

5.    At all times material hereinafter mentioned, Defendant Charles Lopresti, (Shield No. 6757,  Tax Reg# 895653), ("Lopresti") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and is a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct.  Plaintiff brings this action against Lopresti in his personal, supervisory, and official capacities.

6.    At all times material hereinafter mentioned, Defendant, Mark Alvarano ("Alvarano") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and is a police Sergeant employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct.  Plaintiff brings this action against Alvarano in his personal, supervisory, and official capacities.

2

7.    At all times material hereinafter mentioned, Defendant, Reginald Syke ("Syke") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and is a police Sergeant employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct. Plaintiff brings this action against Syke in his personal, supervisory, and official capacities.

8.    At all times material hereinafter mentioned, Defendant, Richard Averoski, ("Averoski") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and is a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct. Plaintiff brings this action against Averoski in his personal, supervisory, and official capacities.

9.    At all times material hereinafter mentioned, Defendant, Thomas Canny ("Canny") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and is a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct. Plaintiff brings this action against Canny in his personal, supervisory, and official capacities.

10.    Upon information and belief, at all times material hereinafter, Defendants, John and Jane Does are or were members of the NYPD and are/were employed, retained, trained, and supervised by NYC and the NYPD as police and

3

supervisory officers. Plaintiff brings this action against John and Jane Does in their individual, official, and supervisory capacities.

11. Defendants Lopresti, Alvarado, Skye, Averoski, Canny and the John and Jane Does, are hereinafter collectively referred to as the "NYPD Defendants" At all times material hereinafter, the NYPD Defendants were acting under color of law and pursuant to their authority as police officers and supervisory officers and employees of NYC and the NYPD. All of the NYPD Defendants actions described herein are within the scope of their employment. The NYPD Defendants are State Actors.

12. Under the Charter of the City of New York, NYC is responsible for the conduct of municipal agencies such as NYPD, and as such is the legal entity responsible for implementing any legal or equitable relief ordered by the Court in this action.

**Facts**

13. On March 24, 2009 Plaintiff was lawfully inside a residence, located at 172-38 125th. Avenue, Queens County, New York. (The "Residence")

14. Plaintiff was present at the Residence in a basement room where Robert Dixon. ("Dixon") was staying. Dixon is the biological father of Plaintiff's biological minor daughter.

4

15.   However, at no point in time, during the actions described herein, was Plaintiff's and Dixon's minor daughter in that room or anyplace within the Residence or even near the property that the Residence was located upon.

16.   Members of the NYPD entered the Residence.

17.   Shortly thereafter Plaintiff exited the room, where after a brief verbal exchange with one of the NYPD Defendants, she was placed handcuffs and detained within the Residence.

18.   Plaintiff did not feel and in fact was not was not free to leave custody of the NYPD Defendants that were present.

19.   The NYPD Defendants had neither a search warrant for the Residence or an arrest warrant for Plaintiff, Dixon, or any other person in the Residence.

20.   Given the facts and circumstances no reasonable police officer would have arrested Plaintiff.

21.   At no point had Plaintiff violated any Federal, State, or local law, nor was there any reasonable basis for the NYPD Defendants to believe that Plaintiff had committed a crime or violation.

22.   At no point did the NYPD Defendants have sufficient legal cause to stop, detain, search, seize, or arrest Plaintiff, nor was there any reasonable basis for the NYPD Defendants to believe such cause existed.

23.   Plaintiff did not consented to a search or her person or the seizure of her person or things.

24.   Following her unlawful seizure and arrest Plaintiff was removed from the Residence and unlawfully transported, via a police vehicle, to the 103rd. Police Precinct.

25.   While in custody Plaintiff was placed under duress by the NYPD Defendants, including by not limited to, Lopresti, by their threatening to charge her in addition to Dixon.  Walrond was told that if both her and Dixon were charged, that Walrond would lose custody of her minor child.

26.   Further, Walron was told that in order to avoid loosing her child she would need to waived her rights and made a untrue written statement, as it was dictated to her by Lopresti, with the further assistance of the other NYPD Defendants.

27.   The NYPD Defendants delayed Plaintiff's appearance before an arraignment court while engaging in a period of coercive activity in which Plaintiff was taken back and forth several times from a holding cell to an interrogation area, where the

6

threat regarding loosing her minor child was made.

28.    Under duress Plaintiff acquiesced and made the written statement.

29.    Subsequent to the obtaining Plaintiff's coerced written statement the NYPD
       Defendants transported her to the NYPD's Central Booking until Plaintiff was
       transported to Queens County Criminal Court.

30.    The criminal prosecution against Wolrond was commenced with a sworn
       Complaint, signed by Lopresti, in which he falsely claimed to have observed
       Walrond, *inter alia*, (a) in possession of weapons, narcotics, and marijuana; (b)
       the presence of her minor child at the Residence; and (c) also falsely testified and
       created paper work, regarding the particulars of his search of the Residence.

31.    The NYPD defendants conspired and aided and abated one another in
       commencing false and abusive criminal process and proceedings against Plaintiff
       for improper and illegal ends.

32.    Based upon Lopresti's sworn complaint,  Plaintiff was arraigned and charged,
       with, *inter alia*, violating various provisions New York Penal Law: Article 265
       Criminal Possession of a Weapon; Article 220, Criminal Possession of a narcotic
       substance; Article 221, Criminal Possession of Marijuana; and Article 260,
       Endangering the Welfare of a Child, under Criminal Court docket number
       2009QN016646.

33.    Plaintiff was arraigned on the charges contained within Lopresti's sworn

complaint at the Queens County Criminal Court.

34. At Plaintiff's arraignment bail was set which was eventually posted. Plaintiff was imprisoned and remained continually confined from the time of her initial seizure, at the Residence, until she was relapsed on bail following her arraignment in Queens Criminal Court.

35. However, Plaintiff's liberty remained restrained after her release on bail as she was ordered, under sanction of arrest and bail forfeiture, to reappear at her subsequent court dates.

36. Upon information and belief, Lopresti's allegations in the Criminal Complaint and other paper work utilized in the arrest and prosecution were materially false, and Lopresti's knew them to be false at the time they were made.

37. Upon information and belief, the other NYPD Defendants also knew, or should have known, that the Criminal Complaint and other other paper work utilized in the arrest and prosecution in criminal court were materially false at the time Lopresti's made them.

38. Upon information and belief, Plaintiff was unjustly and unlawfully subjected to abusive criminal process in order to justify the NYPD Defendants' improper entry into the Residence and in an attempt to coercively obtain Plaintiff's written statement linking Dixon with weapons, narcotics, marijuana, and cash that were discovered within the Residence as the result of an unlawful search, in places other than where the NYPD Defendants asserted their were discovered.

39.   Upon information and belief, the NYPD Defendants planned that by obtaining Plaintiff's written statement and then charging her, that Plaintiff would need to stick with her written statement throughout the course of the prosecution against Dixon.

40.   Upon information and belief, the NYPD Defendants agreed to fabricate false charges and false paperwork and aid and abet one another in doing so. This included an allegation that Plaintiff's minor child was [resent at the Residence when she in fact was not.

41.   At no time did the NYPD Defendants have sufficient cause to commence criminal process against Plaintiff, or cause such process to be commenced, nor was there any basis for the NYPD Defendants to reasonably believe that such cause existed.

42.   The NYPD Defendants actions were willful, intentional, and malicious.

43.   Plaintiff's diminished liberty continued, until the Grand Jury's retuning a No True Bill and the case against her was subsequently, on or about September 24, 2009, favorably terminated and dismissed.

44.   Upon information and belief, the NYPD Defendants actions were taken, in part or whole, to deprive her of her Constitutional rights and in furtherance of an illegitimate collateral objective of tying Dixon to the illegal items discovered within the Residence.

45.   Upon information and belief, no police officer or other NYPD defendant

intervened or stopped the NYPD Defendants from seizing, arresting, and or charging Plaintiff.

46. Upon information and belief, no supervisory NYPD member or officer prevented or remedied the unlawful arrest.

47. Upon information and belief, supervisory NYPD members and officers ratified the arrest, tacitly or explicitly.

48. At no time did the NYPD Defendants have sufficient cause to commence criminal process against Plaintiff, or cause such process to be commenced, nor was there any basis for the NYPD Defendants to reasonably believe that such cause existed.

**FIRST CAUSE OF ACTION**
**FEDERAL CLAIMS**
**AGAINST ALL INDIVIDUAL DEFENDANTS**

49. Plaintiff repeats and realizes each and every allegation contained in paragraphs 1 through 48 as if set forth fully herein.

50. Upon information and belief, the NYPD Defendants violated, conspired to violate, and aided and abetted in the violation of Plaintiff's clearly established and well-settled federally protected rights.

51. The acts and conduct described herein deprived the Plaintiff of her rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution, in violation of and 42 U.S.C. §1983,

(a)    To be free of unreasonable search and seizure of her person and effects, by police officers acting under color of law;

(b)    To be free from unlawful warrantless arrest by police officers acting under color of law;

(c)    To be free from False Imprisonment by police officers acting under color of law;

(d)    Not to be deprived of Liberty without Procedural and / or Substantive Due Process of Law;

(e)    To be free from Abuse of Process;

(f)    To be free from Malicious Prosecution;

(g)    To Equal Protection under the law, and not to be deprived of any Right or Privileges of a citizen;

(h)    To be free from coercive and threating interrogation; and

(i)    To be deprived of her right to Counsel.

52.    The acts and conduct of the NYPD Defendants described above was intentional, wanton, malicious and oppressive.

53.    As a direct and proximate result of the NYPD Defendants' acts described herein, the NYPD Defendants have caused Plaintiff to suffer deprivation of her liberty, mental and emotional distress, suffering, humiliation, embarrassment, economic, and other damages.

## SECOND CAUSE OF ACTION
## FEDERAL CLAIMS
## AGAINST SUPERVISORY DEFENDANTS

54.    Plaintiffs repeat and realize each and every allegation contained in

       paragraphs 1 through 53 as if repeated fully herein.


55.    Upon information and belief, defendants Alvarano, John and Jane Does failed to

       supervise, monitor, train and discipline NYPD Defendants and the other non

       supervisory NYPD Defendants.


56.    Upon information and belief, defendants Alvarano and John and Jane Does and

       other NYPD Defendants have shirked their duty to ensure that officers under their

       control, and accountable to them, do not engage in civil rights violations and

       unlawful conduct.


57.    Upon information and belief, the acts and conduct of the Alvarano and the

       supervisory John and Jane Does described above was intentional, wanton,

       malicious and oppressive.


58.    As a direct and proximate result of Alvarano and the supervisory John and Jane

       Doe Defendants' acts described above, they have caused Plaintiff to suffer

       deprivation of her liberty, mental and emotional distress, humiliation,

       embarrassment, economic and other damages.

## THIRD CAUSE OF ACTION
## FOURTH and FOURTEENTH AMENDMENT
## MONELL CLAIM AGAINST NYC

59.   Plaintiff repeats and realleges, each and every allegation contained in

paragraphs 1 through 58 as if fully set forth fully herein.

60.   At all times herein mentioned the NYC, its agents, employees and servants,

including but not limited to the NYPD Defendants, acted under color of the

statutes, customs, ordinances and usage of the City and State of New York.

61.   Upon information and belief, the acts and conduct complained of herein resulted

in part from a de facto policy or custom, or practice of the Defendant NYC,

implemented by police officers of the NYC and/ condoned by the NYPD, to stop,

seize, and charge civilians without legally sufficient justification. Further the acts

and conduct complained of herein resulted in part from a de facto policy or

custom of the Defendant NYC, implemented by the NYPD and/or the police

officers of the NYC, to allow police officers to work without proper levels of

supervision. NYC was responsible for ensuring that reasonable levels of

supervision were in place within the NYPD generally and the 103rd, 107th, and

113th precincts specifically.

62.   Upon information and belief, NYC, its officers, officials, agents, employees, and

servants,  knew or should have known that there was inadequate supervision

within the 103rd, 107th, and 113th precincts on and prior to March 24, 2009, and

that individuals were routinely improperly seized and charged by NYPD members. Despite the prior notice of inadequate supervision, NYC took no steps to ensure that reasonable levels of supervision were in place at the 103rd, 107th, and 113th precincts precinct in order to reasonably provide that NYPD officers engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers to stop, detain, search and arrest members of the public, including and specifically, the Plaintiff herein and make untrue statements and fabricate evidence in order to support a case based upon improperly obtained physical evidence.

63.    NYC and its officers, officials, agents, employees, and servants, officers, were deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of Plaintiffs' rights in particular.

64.    All Defendants acted under pretense and color of state law and in their official capacities and within the scope of their employment.

65.    Said acts by the Defendants were without authority in law, and were in abuse of their powers. Said Defendants acted willfully, knowingly, and with specific intent to deprive Plaintiff of her constitutional rights.

66.    As a result of the failure of its officials to properly recruit, train, discipline

and supervise its police officers, including the NYPD Defendants that were present at the Residence and the 103rd Police Precinct, NYC has tacitly authorized, ratified, and been deliberately indifferent to, the acts and conduct complained of herein.

67.   As a direct and proximate result of the Defendants' acts described herein, Defendants have caused Plaintiff to suffer deprivation of her liberty, mental and emotional distress, suffering, humiliation, embarrassment, economic, and other damages.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38 Plaintiff demands a trial by jury, on all issues so triable, in this action.

**WHEREFORE**, Plaintiff, Vernnesscia Walrond, demands judgment and prays for the following relief, jointly and severally, against the individual NYPD Defendants:

(a) Full and fair compensatory and punitive damages in an amount to be determined by a Jury;

(b) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §§1988, the costs and disbursements of this action; and

(c) Such other and further relief as appears just and proper.

And the following relief against the municipal Defendant NYC:

(a) Full and fair compensatory damages in an amount to be determined by a Jury;

(b) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §1988, the costs and disbursements of this action; and

(c) Such other and further relief as appears just and proper.

Dated: New York, New York
      March 24, 2012

BY:
Glenn A. Wolther
*Attorney At Law*
305 Broadway, Suite 1102
New York, New York 10007
Tel: (212) 964-2120

*Attorney for Plaintiff*
Vernnesscia Walrond

16