UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
VERNESSCIA WALROND,

                         Plaintiff,

        -against-

THE CITY OF NEW YORK, a municipal corporation,
DETECTIVE CHARLES LOPRESTI, MARK ALBARANO;
SERGEANT REGINALD SYKE, DETECTIVE RICHARD
EVEROSKI, DETECTIVE THOMAS CANNY, and JOHN
AND JANE DOES Individually and as Police and
Supervisory Officers of the New York City Police
Department, the identity and number of which is presently
unknown,

                         Defendants.
--------------------------------------------------------------------X

**AMENDED COMPLAINT**

**12-CV-1491 (WFK)(RLM)**

**JURY TRIAL
<u>DEMANDED</u>**

       Plaintiff, Vernesscia Walrond, by her attorney, the Law Office of Glenn A. Wolther, as

and for her complaint alleges as follows, upon information and belief:

### <u>Jurisdiction & Venue</u>

1.     Jurisdiction is based on 28 U.S.C. §§1331 and 1343.


2.     Venue is properly lodged in this Judicial District pursuant to 28 U.S.C. §1391(b)(1), this

    being the District in which the majority of events and omissions giving rise to the claims

    occurred.

**Parties**

3.      At all times hereinafter mentioned Plaintiff, Vernesscia Walrond ("Plaintiff" or "Walrond") was an adult female.

4.      At all relevant times hereinafter mentioned, Defendant The City of New York ("NYC"), was and is a municipal corporation, duly organized and existing under and by virtue of the laws of the State of New York.  NYC acts by and through its agencies, employees, and agents including but not limited to the New York City Police Department ("NYPD") and its employees. The NYPD is a non-suable subdivision of NYC and its employees are employees of NYC.

5.      At all relevant times hereinafter mentioned, Defendant Charles Lopresti, (Shield No. 6757, Tax Reg# 895653), ("Lopresti") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and is a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct.  Plaintiff brings this action against Lopresti in his personal, supervisory, and official capacities.

6.      At all relevant times hereinafter mentioned, Defendant, Mark Albarano ("Albarano") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and was a police Sergeant employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct.  Plaintiff brings this action against Albarano in his personal, supervisory, and official capacities.

7.    At all relevant times hereinafter mentioned, Defendant, Reginald Syke ("Syke") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and was a police Sergeant employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct. Plaintiff brings this action against Syke in his personal, supervisory, and official capacities.

8.    At all relevant times hereinafter mentioned, Defendant, Richard Everoski, ("Everoski") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and was a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct. Plaintiff brings this action against Everoski in his personal, supervisory, and official capacities.

9.    At all relevant times hereinafter mentioned, Defendant, Thomas Canny ("Canny") was assigned to Queens Detective Area 103 and / or the 103th Precinct of the NYPD and was a police Detective employed, trained, retained, and supervised, by NYC and the NYPD at Queens Detective Area 103 and / or the 103th Precinct. Plaintiff brings this action against Canny in his personal, supervisory, and official capacities.

10.    Upon information and belief, at all relevant times hereinafter, Defendants, John and Jane Does are or were members of the NYPD and are/were employed, retained, trained, and supervised by NYC and the NYPD as police and supervisory officers. Plaintiff brings this action against John and Jane Does in their individual, official, and supervisory capacities.

11.     Defendants Lopresti, Albarano, Skye, Everoski, Canny and the John and Jane Does, are hereinafter collectively referred to as the "NYPD Defendants" At all times hereinafter, the NYPD Defendants were acting under color of law and pursuant to their authority as police officers and supervisory officers and employees of NYC and the NYPD. All of the NYPD Defendants actions described herein are within the scope of their employment. The NYPD Defendants are all State Actors.

12.     Under the Charter of the City of New York, NYC is responsible for the conduct of municipal agencies such as NYPD, and as such is the legal entity responsible for implementing any legal or equitable relief that may be ordered by the Court in this action.

**Facts**

13.     On March 24, 2009 Plaintiff was lawfully inside a residence, located at 172-38 125th. Avenue, Queens County, New York. (The "Residence".)

14.     Plaintiff was present at the Residence in a basement room where Robert Dixon. ("Dixon") was staying. Dixon is the biological father of Plaintiff's biological minor daughter.

15.     However, at no point in time, during the actions described herein, was Plaintiff's and Dixon's minor daughter in that room or anyplace within the Residence or even near the property that the Residence was located upon.

16.     Members of the NYPD entered the Residence.

17.     Shortly thereafter Plaintiff exited the room, where after a brief verbal exchange with one of the NYPD Defendants, she was placed in handcuffs and detained within the Residence.

18.     Plaintiff did not feel and in fact was not was not free to leave custody of the NYPD Defendants that were present.

19.     The NYPD Defendants had neither a search warrant for the Residence nor an arrest warrant for Plaintiff, Dixon, or any other person in the Residence.

20.     Given the facts and circumstances no reasonable police officer would have arrested Plaintiff.

21.     At no point had Plaintiff violated any Federal, State, or local law, nor was there any reasonable basis for the NYPD Defendants to believe that Plaintiff had committed a crime or violation.

22.     At no point did the NYPD Defendants have sufficient legal cause to stop, detain, search, seize, or arrest Plaintiff, nor was there any reasonable basis for the NYPD Defendants to believe such cause existed.

23.    Plaintiff did not consent to a search or her person or the seizure of her person or things.

24.    Following her unlawful seizure and arrest Plaintiff was removed from the Residence and unlawfully transported, via a police vehicle, to the 103rd. Police Precinct.

25.    While in custody Plaintiff was placed under duress by the NYPD Defendants, including by not limited to, Lopresti, by their threatening to charge her in addition to Dixon. Walrond was told that if both her and Dixon were charged, that Walrond would lose custody of her minor child.

26.    Further, Walrond was told that in order to avoid loosing her child she would need to waive her rights and made a untrue written statement, as it was dictated to her by Lopresti, with the further assistance of the other NYPD Defendants that were present.

27.    The NYPD Defendants that were present delayed Plaintiff's appearance before an arraignment court while engaging in a period of coercive activity in which Plaintiff was taken back and forth several times from a holding cell to an interrogation area, where the threat regarding loosing her minor child was made.

28.    Under duress Plaintiff acquiesced and made a written statement. Any purported waiver of her rights, as well as any statement she made, was involuntary obtained, as her will was overcome by the abusive and coercecive tactics employed by the NYPD Defendants that were present.

29.    Subsequent to the obtaining Plaintiff's coerced false written statement the NYPD
       Defendants that were present transported her to the NYPD's Central Booking and Plaintiff
       was later transported to Queens County Criminal Court.

30.    Upon information and belief, the NYPD Defendants knowingly created and fabricated
       false information--including--official paperwork, documents, and information that was
       materially false, knowing that: (a) the Queens County District Attorneys ("DAQC")
       Office would rely on the false information and (b) that the false information was likely to
       influence a jury's decision. The NYPD Defendants then forwarded and distributed the
       false information to DAQC's office.

31.    Upon information and belief, in order to make their actions, with respect to Plaintiff and
       Dixon, appear legitimate, the NYPD Defendants conspired, aided and abated, and acted in
       a joint venture, with one another one another, and agreed to fabricated false NYPD
       official paper work, documents, and information and then transmitted and communicated
       the false and fabricated official paperwork, documents, and information-including the
       coerced and untrue statement from Plaintiff- to the DAQC in an attempt to make it appear
       that there was a constitutionally permissible bases for the NYPD Defendants' actions
       when in fact there was not.

32.    At the time(s) that the NYPD Defendants transmitted and communicated the false and
       fabricated official paperwork, documents, and information to the DAQC's office it was
       reasonably foreseeable to the NYPD Defendants that the DAQC's office rely upon the
       transmittions and communications that would lead to Plaintiff's being charged with

various crimes.

33.    And this is precisely what happened. From the time the first official paperwork and documents, were created, continuing through all the pre-trial proceedings in the criminal case, upon information and belief, the NYPD Defendants deliberately and intentionally deceived the DAQC's office regarding the factual information relating to Plaintiff.

34.    Upon information and belief, Plaintiff was unjustly and unlawfully subjected to abusive criminal process in order to justify the NYPD Defendants' improper entry into the Residence and in an attempt to coercively obtain Plaintiff's written statement linking Dixon with weapons, narcotics, marijuana, and cash that were discovered within the Residence as the result of an unlawful search, in places other than where the NYPD Defendants asserted they were discovered.

35.    Upon information and belief, the NYPD Defendants believed that by obtaining Plaintiff's written statement and then charging her, that Plaintiff would need to stick with her written statement throughout the course of the prosecution against Dixon.

36.    Upon information and belief, as part of the NYPD Defendants conspiracy and joint venture they agreed to fabricate false charges and false official paperwork and documents and aid and abet one another in doing so. This included an allegation that Plaintiff's minor child was present at the Residence when she in fact was not.

37.    The criminal prosecution against Walrond was commenced with a sworn accusatory instrument / Complaint, docket number 2009QN016646, signed by Lopresti, in which he falsely swore to have observed Walrond, *inter alia*, (a) in possession of weapons, narcotics,

and marijuana; (b) to have been in the presence of her minor child at the Residence. Additionally, Lopresti, and other NYPD Defendants created false official paper work and documents, regarding the particulars of his search of the Residence.

38.   Plaintiff was arraigned on the charges contained within Lopresti's sworn accusatory instrument / Complaint at the Queens County Criminal Court.

39.   Based upon Lopresti's sworn complaint, Plaintiff was arraigned and charged, with, *inter alia,* violating various provisions New York Penal Law: Article 265 Criminal Possession of a Weapon; Article 220, Criminal Possession of a Narcotic Substance; Article 221, Criminal Possession of Marijuana; and Article 260, Endangering the Welfare of a Child.

40.   Lopresti's allegations in the Criminal Complaint and other official paper work and documents utilized in the arrest and prosecution were materially false, and Lopresti's knew them to be false at the time they were made.

41.   Upon information and belief, the other NYPD Defendants also knew, or should have known, that the Criminal Complaint and other official paper work and documents utilized in the arrest and prosecution were materially false at the time Lopresti's made them.

42.   At Plaintiff's arraignment bail was set which was eventually posted. However, Plaintiff was imprisoned and remained continually confined from the time of her initial seizure, at the Residence, until she was released on bail following her arraignment in Queens Criminal Court.

43.   Furthermore, Plaintiff's liberty remained restrained after her release on bail as she was ordered, under sanction of arrest and bail forfeiture, to reappear at her subsequent court

dates.

44.    Plaintiff's diminished liberty continued, until the Grand Jury's retuning a No True Bill and the case against her was subsequently favorably terminated and dismissed on or about September 24, 2009.

45.    At no time did the NYPD Defendants have sufficient cause to commence criminal process against Plaintiff, or cause such process to be commenced, nor was there any basis for the NYPD Defendants to reasonably believe that such cause existed.

46.    Upon information and belief, the NYPD Defendants actions were willful, intentional, and malicious.

47.    Upon information and belief, the NYPD Defendants actions were taken, in part or whole, to deprive Plaintiff of her Constitutional rights and in furtherance of an illegitimate collateral objective of tying Dixon to the illegal items discovered within the Residence.

48.    Upon information and belief, no police officer or other NYPD Defendant intervened or stopped the NYPD Defendants from seizing, arresting, and /or charging Plaintiff or continuing the criminal prosecution against the Plaintiff.

49.    Upon information and belief, no supervisory NYPD member or supervisory NYPD Defendant prevented or remedied the unlawful arrest and criminal prosecution.

50.    Upon information and belief, supervisory NYPD members, supervising officers ratified

the arrest, tacitly or explicitly.

## FIRST CAUSE OF ACTION
## FEDERAL CLAIMS
## AGAINST ALL INDIVIDUAL DEFENDANTS

51.    Plaintiff repeats and realizes each and every allegation contained in

paragraphs 1 through 50 as if set forth fully herein.

52.    Upon information and belief, the NYPD Defendants violated, conspired to violate, and

aided and abetted, and acted in a joint venture, with one another one another in the

violation of Plaintiff's clearly established and well-settled federally protected rights.

53.    The acts and conduct described herein deprived the Plaintiff of her rights under

the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States

Constitution, in violation of and 42 U.S.C. §1983,

(a)    To be free of Unreasonable Search and Seizure of her person and effects, by
       police officers acting under color of law;

(b)    To be free from unlawful Warrantless Arrest by police officers acting under
       color of law;

(c)    To be free from False Imprisonment by police officers acting under color of law;

(d)    Not to be deprived of her Right to a Fair Trial by police officers acting under
       color of law;

(e)    Not to be deprived of Liberty by having police officers Fabricate and /or Falsify

Official Paperwork, Evidence, False Involuntary Coerced Statements, and/or Information against her; and transmitting that false evidence to the District Attorney/ Prosecutor's office/ while acting under color of law;

(f)     Not to be deprived of Liberty without Procedural and / or Substantive Due Process of Law by police officers acting under color of law;

(g)     To be free from Abuse of Process by police officers acting under color of law;

(h)     To be free from Malicious Prosecution by police officers acting under color of law;

(i)     Not to be Deprived of Equal Protection under the law, and not to be Deprived of any Right or Privileges of a Citizen, by police officers acting under color of law;

(j)     To be free from Coercive, Threatening, and Involuntary Interrogation, by police officers acting under color of law;

(k)     Not to be Deprived of her Right to Intimate Familial Association; and

(l)     To be Deprived of her Right to Counsel, Constitutional Guarantee of *Miranda* Rights, and to be free from Self Incrimination based upon False Involuntary Coerced Statements by police officers acting under color of law.

54.     The acts and conduct of the NYPD Defendants described above was intentional, wanton, malicious and oppressive.

55.     As a direct and proximate result of the NYPD Defendants' acts described herein, the NYPD Defendants have caused Plaintiff to suffer deprivation of her liberty, mental

and emotional distress, suffering, humiliation, embarrassment, economic, and other damages.

## SECOND CAUSE OF ACTION
### FEDERAL CLAIMS
### <u>AGAINST SUPERVISORY DEFENDANTS</u>

56.     Plaintiff repeat and realize each and every allegation contained in paragraphs 1 through 55 as if repeated fully herein.

57.     Upon information and belief, defendants Albarano, John and Jane Does failed to supervise, monitor, train and discipline NYPD Defendants and the other non supervisory NYPD Defendants.

58.     Upon information and belief, defendants Albarano and John and Jane Does and other NYPD Defendants have shirked their duty to ensure that officers under their control, and accountable to them, do not engage in civil rights violations and unlawful conduct.

59.     Upon information and belief, the acts and conduct of the Albarano and the supervisory John and Jane Does described above was intentional, wanton, malicious and oppressive.

60.     As a direct and proximate result of Albarano and the supervisory John and Jane Doe Defendants' acts described above, they have caused Plaintiff to suffer deprivation of her liberty, mental and emotional distress, humiliation, embarrassment, economic and other damages.

## THIRD CAUSE OF ACTION
## FOURTH, FIFTH, SIXTH and FOURTEENTH AMENDMENT
## *MONELL* CLAIM AGAINST NYC

61.    Plaintiff repeats and realleges, each and every allegation contained in paragraphs 1 through 60 as if fully set forth fully herein.

62.    At all times herein mentioned the NYC, its agents, employees and servants, including but not limited to the NYPD Defendants, acted under color of the statutes, customs, ordinances and usage of the NYC and State of New York.

63.    Upon information and belief, the acts and conduct complained of herein resulted in part from a *de facto* policy or custom, or practice of the Defendant NYC, implemented by police officers of the NYC and/or condoned by the NYPD, to stop, seize, and search individuals and then attempt to cover up the illegal nature of the searches and seizures by fabricating false statements/confessions, official paperwork, documents, information, and evidence knowing that the statement/confessions, official paperwork, documents, information, and evidence would be relied upon the DAQC and other District Attorney's Offices within NYC and charge, deprive them of their Liberty, and maliciously prosecute, civilians without legally sufficient justification.

64.    Upon information and belief, the acts and conduct complained of herein resulted in part from a *de facto* policy or custom, or practice of the Defendant NYC, implemented by police officers of the NYC and/or condoned by the NYPD: To stop, seize, search, and falsely arrest and imprison individuals on less than probable cause; To forward, transmit,

and communicate false information- containing false and/or fabricated official paper work, documents, statements/confessions, testimony, information, and /or evidence knowing that false information would be relied upon the DAQC and other District Attorney's Offices within NYC to charge, and maliciously prosecute, civilians without legally sufficient justification; To fabricating false official police paper work, documents, testimony, information, and /or evidence to protect themselves and other members of the NYPD; To search and seize persons to reach productivity goals/ arrest quotas, in which the NYC has acquiesce in and ratify widespread unlawful practices by NYPD members including within the 103rd, 107th, and 113th and other NYPD Precincts. NYC has an ongoing and arbitrary refusal to discipline its officers and to adequately investigate allegations of abuse, neglect, cruelty, and violation of NYPD departmental rules and regulations has demonstrated a pattern and practice of deprivation of civil rights and abuse of state power by subjecting persons to unlawful and unjustified detentions and deprivations of their rights and generally creating and fostering an environment in which an attitude of "cover-up" and denial of officer misbehavior, tortious acts, and violations of law are condoned and accepted, all of which is common knowledge to the subject community and residents within the New York City area.

65.     Further, upon information and belief, the acts and conduct complained of herein resulted in part from a *de facto* policy or custom, or practice of the Defendant NYC, implemented by police officers of the NYC and/or condoned by the NYPD, of failing to properly supervise, train, instruct, and discipline police officers with regard to: the preparation of truthful accusatory instruments/ criminal complaints/supporting depositions; adequate

evidence of crimes and to discipline those who unjustifiably charge and prosecute or

continue to prosecute persons accused of crimes in the absence of probable cause; the

proper methods of conducting interviews of witnesses and/or accused persons, and to

discipline police officers who use improper methods to coerce and/or elicit false

statements and/or confessions; "testilying" and/or fabricating false evidence to bring

about the police officers' preconceived perceptions or determinations of guilt, including,

but not limited to, such perceptions and/or determinations influenced by racial prejudice

and/or ethnic bias and; to allow police officers to work without proper levels of

supervision and not properly investigate complaints of similar misconduct or discipline

NYPD members regarding such complaints and other information it has been made aware

of. NYC was responsible for ensuring that reasonable levels of supervision were in place

within the NYPD generally and the 103rd, 107th, and 113th Precincts specifically.

66.     Additional incidents of NYC's *de facto* policy or custom, or practice and/or deliberate

indifference regarding false fabricated statements /evidence / testimony, are set forth in *In

re McCray, Richardson, Santana, Wise and Salaam Litigation*, 03 Cv. 9685

(DAB)(RLE)(S.D.N.Y.)(False coerced confessions); *Ozem Goldwire v. The City of New

York*, 08 cv 134 (RRM) (CLP) (E.D.N.Y.)(False coerced confessions). Additional

incidents of NYC's *de facto* policy or custom, or practice and/or deliberate indifference

regarding arrest quotas and police perjury are set forth in *Schoolcraft v. City of New York*,

10 Cv 6005 (RWS)(S.D.N.Y.)(In a civil rights lawsuit, a former officer of the N.Y.P.D.

described the N.Y.P.D.'s *de facto* policy and practice regarding illegal quotas for, *inter

alia*, arrests, which including arrest absent probable cause, as well describing wide spread

falsification of evidence and police perjury.); *Colon v. City of New York*, 09 Cv. 8, 09 Cv 9 (JBW)(2009 WL 4263362 at *2 (E.D.N.Y. Nov. 25, 2009.)(repeated, widespread falsification by NYPD members); *See also*, *Matthews v. City of New York*, 12 cv 1354(BSJ) (S.D.N.Y. Apl. 12, 2012)(regarding illegal N.Y.P.D. quotas.). Despite the prior notice of inadequate supervision, NYC took inadequate steps to ensure that reasonable levels of supervision were in place within the 103rd, 107th, and 113th precincts Precinct in order to reasonably provide that NYPD officers engaged in police conduct in a lawful and proper manner, including their use of their authority as law enforcement officers to stop, detain, search, seize, and maliciously prosecute members of the public, including and specifically, the Plaintiff in this action.

67.     Illegal arrest and subsequent fabrication of information --such as charges, official paperwork, documents, and statements,  to cover up that illegal is consistent with the culture of Constitutional abuse, of citizens, that has long existed within the NYPD. NYC's pattern and practice, a *de facto* policy or custom, or practice, and deliberate indifference to police corruption have long been documented. In fact in 1994 the Mollen Commission concluded that police perjury and falsification of official records was a ongoing and serious problem, finding that:

> Police perjury and falsification of official records is a serious problem facing Department and the criminal justice system- largely because it is so often a "tangled web" that officers weave to cover for other underlying acts of corruption or wrongdoing. (*The City of New York's Commission to Investigate Allegations of Corruption and the Anti-Corruption Procedures of the Police Department*, *Commission Report*, Chair, Milton Mollen (July 7, 1994) ("Mollen Report").

68.     The Mollen Report found "falsification" in:

[D]documentary perjury, as when an officer swears falsely under oath in an affidavit or criminal complaint; and the falsification of police records, as when an officer falsifies the facts and circumstances of an arrest in the police reports. (Mollen Report at 36.)

69.    Further the Mollen Report found that:

[O]nce officers falsify the basis of the arrest, search, or other action in a Department record-such as an arrest report, complaint report, search warrant application, or evidence voucher- to avoid Departmental or criminal charges, they must stick to their story even under oath when swearing to a criminal complaint . . ." (*Id.* 36-37.)

70.    Further the Mollen Report found that:

Falsification to conceal corruption was a common practice among many of the corrupt officers cooperating with this Commission. . . To explain how and why they were present in a particular premises or came to arrest a particular person, officers manufactured facts. . . .

In a typical case . . . To conceal their crime, the officers falsified their arrest reports and then stuck to their fabricated story when the District Attorney's Office reviewed the case for prosecution." (*Id.* 37.)

71.    Despite the recommendations of the Mollen Report, as well as many other studies, for example, the findings in 2000 of the United States Commission on Civil Rights, published in, *Police Practices and Civil Rights in New York City* (2000),  NYC and the NYPD have allowed the pattern of misconduct to continue.

72.    This ongoing pattern of misconduct within the NYPD has been evidence recently in the indictment and subsequent convictions of former NYPD members, Sergeant William Eiseman and police officer Michael Carsey.

73.    Eiseman at times supervised Carsey where illegal searches led to the recovery of

contraband, Eiseman ordered his subordinates to falsify their police paperwork in order to make the stops and searches appear legitimate. (*See* June 27, 2011 and March 8, 2012 *Press Releases of New York County District Attorney's Office.*)

74.    According to his guilty plea, Eiseman was involved in at least three incidents of misconduct documented between August 2007 and the summer of 2008. Each involved unlawful stops and detentions of civilians, which sometimes led to unlawful searches as well.  And where the searches led to the recovery of contraband, Eiseman ordered his subordinates to falsify their police paperwork in order to make the stops and searches appear legitimate. In 2011 Eiseman plead guilty, to the top charge in his indictment, Perjury in the First Degree, as well as three counts of Official Misconduct, for lying under oath, conducting unlawful searches and seizures, and directing subordinates to falsify paperwork in order to make the arrests appears to be legitimate. In 2012, Carsey was found guilty after a jury trial on two counts of Perjury in the First Degree and one count of Offering a False Instrument for Filing in the First Degree. (*Press Releases of New York County District Attorney's Office.*)

75.    The Honorable Jack B. Weinstein has pointed to this widespread falsification arresting police officers within the NYPD and stated:

> Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration—through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department—there is some evidence of an attitude among officers that is

sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." *Colon v. City of New York* et al.,  09 cv. 8, 09 cv. 9 (JBW), 2009 WL 4263362 at *2 (E.D.N.Y.  Nov. 25, 2009.)

76.    Additionally, the NYPD pattern of coercive interrogations leading to false statements/confessions has also continued despite warnings.  In a letter to NYPD Commissioner Raymond Kelly, dated September 17, 2002, the New York Civil Liberties Union ("NYCLU") stated, "[W]e are aware of numerous recent cases in New York in which post-conviction disclosures exonerated defendants who had confessed to serious crimes." The NYCLU recommended that, "the videotaping of custodial interrogations would provide the Department and prosecutors with persuasive evidence to rebut unfounded charges of coercion by defendants, which also would substantially benefit the criminal-justice system." (NYCLU Letter, September 17, 2002.)

77.    However, the NYPD did not adopt protocols for recording interrogations--and then only involving certain classes of cases-- until 2011, after a pilot projected was implemented in four police precincts in 2010, and after that date of the coercive interrogation in this case.

78.    The NYPD implemented the recording protocols to reduce the number of "false" confessions, following a recommendation by a New York State Justice Task Force. The Task Force, was created to reduce wrongful convictions within New York and found that more than 40 percent of New York's wrongful convictions, which has been proven to be wrongful by post-conviction DNA testing, were the result of false confessions.

79.    NYC and its officers, officials, agents, employees, and servants, officers, were

deliberately indifferent to the risk that the inadequate level of supervision would lead to the violation of individuals' constitutional rights in general, and caused the violation of Plaintiffs' rights in particular.

80.    All Defendants acted under pretense and color of state law and in their official capacities and within the scope of their employment.

81.    Said acts by the Defendants were without authority in law, and were in abuse of their powers. Said Defendants acted willfully, knowingly, and with specific intent to deprive Plaintiff of her constitutional rights.

82.    As a result of the failure of NYC and its officials to properly recruit, train, discipline and supervise its police officers, including the NYPD Defendants that were present at the Residence and the 103rd Police Precinct, NYC has tacitly authorized, ratified, and been deliberately indifferent to, the acts and conduct complained of herein.

83.    As a direct and proximate result of the Defendants' acts described herein, Defendants have caused Plaintiff to suffer deprivation of her liberty, mental and emotional distress, suffering, humiliation, embarrassment, economic, and other damages.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38 Plaintiff demands a trial by jury, on all issues so triable, in this action.

**WHEREFORE**, Plaintiff, Vernesscia Walrond, demands judgment and prays for the following relief, jointly and severally, against the individual NYPD Defendants:

(a) Full and fair compensatory and punitive damages in an amount to be determined by a Jury;

(b) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §§1988, the costs and disbursements of this action; and

(c) Such other and further relief as appears just and proper.

And the following relief against the municipal Defendant NYC:

(a) Full and fair compensatory damages in an amount to be determined by a Jury;

(b) Statutory Attorneys Fees pursuant to, *inter alia*, 42 U.S.C. §1988, the costs and disbursements of this action; and

(c) Such other and further relief as appears just and proper.

Dated: December 26, 2012

BY: _____
Glenn A. Wolther
*Attorney At Law*
305 Broadway, Suite 1102
New York, New York 10007
Tel: (212) 964-2120
*Attorney for Plaintiff*
Vernesscia Walrond